UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NAJAY CUMMINGS,

Plaintiff,

-v.-

JAMES CASSAR, *In Individual and Official Capacity*, and CHELSEA WHITTAKER,

Defendants.

23 Civ. 11184 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Defendants James Cassar and Chelsea Whittaker (collectively, "Defendants") were health care providers who prescribed and administered Zoloft to Plaintiff Najay Cummings while he was detained at Rikers Island for several months in 2019. Mr. Cummings alleges that the medication caused him various health issues, including hyperprolactinemia, gynecomastia, and a sustained loss of libido. He brought this action *pro se* against Defendants alleging a violation of his constitutional rights under 42 U.S.C. § 1983. Before the Court now is Defendants' motion to dismiss.

For the reasons set forth below, the Court grants Defendants' motion to dismiss. In short, the Court does not doubt the difficulties Mr. Cummings's proffered medical issues have caused. But Mr. Cummings's claims nevertheless fail because he has not alleged conduct by Defendants that gives rise to a Section 1983 violation.

**BACKGROUND**[1]

## A.    Factual Background

At some point during or before May 2019, Mr. Cummings was placed in the custody of the New York City Department of Correction ("DOC") at Rikers Island.  (AC 5).  After his detention, Mr. Cummings's suicidal ideations began increasing in frequency.  (*Id.*).  In response, Rikers Island medical staff performed a mental health evaluation (*id.*), and subsequently placed Mr. Cummings on what he terms a "suicide watch" (Nov. 8 Letter 1).  After the evaluation, Mr. Cummings's medical provider, Mr. Cassar, a psychiatric nurse practitioner with Correctional Health Services (Dkt. #10), recommended that Mr. Cummings take medication to help with his depression and suicidal ideations (AC 5).  Mr. Cummings agreed, and Mr. Cassar later prescribed Zoloft.  (*Id.* at 5-6; PMC Tr. 7:24-8:25).

---

[1]    This Opinion draws its facts from the Amended Complaint ("AC" (Dkt. #25)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  In addition, because this is a *pro se* matter, the Court considers the facts that Plaintiff asserted (i) in a November 8, 2025 pre-motion letter ("Nov. 8 Letter" (Dkt. #41)); (ii) at the January 17, 2025 pre-motion conference ("PMC Tr." (Dkt. #46)); (iii) in a February 13, 2025 letter ("Feb. 13 Letter" (Dkt. #47)); and (iv) in exhibits attached to a Declaration he provided with his opposition brief ("Cummings Decl." (Dkt. #55)).  *See Yates* v. *Villalobos*, No. 15 Civ. 8068 (KPF), 2018 WL 718414, at *1 n.2 (S.D.N.Y. Feb. 5, 2018) ("Courts may also consider statements made in response to a defendant's request for a pre-motion conference and statements made during that conference." (collecting cases)); *Alsaifullah* v. *Furco*, No. 12 Civ. 2907 (ER), 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (explaining that courts may consider factual assertions a *pro se* plaintiff makes in a wide variety of sources).  (*See also* Dkt. #43 at 1 (noting that the Court would deem the AC "to have been amended to include those factual assertions ... made by Plaintiff during the [pre-motion] conference" and collecting cases in support)).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #48-13); to Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss as "Pl. Opp." (Dkt. #54); and to Defendants' reply memorandum of law as "Def. Reply" (Dkt #56).  As a final note, when referring to Plaintiff's submissions, this Opinion refers to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.

Mr. Cummings alleges that during his conversations with Mr. Cassar about Zoloft, Mr. Cassar failed to inform him about certain side effects of Zoloft. (AC 7). Mr. Cassar allegedly informed Mr. Cummings about the possibility of increased suicidal ideations, nausea, and vomiting, but not the possibility of decreased libido or gynecomastia. (*Id.* at 8; PMC Tr. 9:1-9:15).[2] Furthermore, Mr. Cassar allegedly did not share any documents with Mr. Cummings regarding Zoloft's possible side effects and did not tell Mr. Cummings to read Zoloft's medication guide. (AC 7; PMC Tr. 9:16-9:20). Mr. Cummings asserts that not knowing all of Zoloft's side effects kept him from "properly and effectively weigh[ing] Zoloft's risks against its benefits." (AC 7). Had Mr. Cummings have known of the potential for decreased libido, which he alleges is "a common side effect" of Zoloft, he suggests that he would have refused the drug as a treatment option. (*Id.* at 7-8).

Instead, Mr. Cummings took Zoloft daily, which Ms. Whittaker, a pharmacy technician with Physician Affiliate Group of New York, Inc. (Dkt. #10), administered to him, also without mentioning any possible side effects (AC 8; PMC Tr. 10:1-11:3). Mr. Cummings missed only the occasional dose. (PMC Tr. 11:6-11:20). He took Zoloft from sometime after May 2019 to the first quarter of 2020. (*Id.* at 7:14-7:23, 10:1-10:7).

In late October 2019, during the course of his Zoloft treatment, Mr. Cummings was transferred to state custody. (PMC Tr 28:8-28:20). At some

---

[2]     Gynecomastia is enlarged breast tissue in males often caused by a hormone imbalance. *Gynecomastia*, Clev. Clinic, https://my.clevelandclinic.org/health/symptoms/16227-enlarged-male-breast-tissue-gynecomastia (last visited Dec. 1, 2025).

point after being transferred to a state facility, Mr. Cummings had a discussion with a medical provider, after which he stopped taking Zoloft.  (AC 6; PMC Tr. 13:7-13:22, 19:15-19:23, 30:7-30:19).  He did so because he felt that the drug "wasn't helping" him.  (PMC Tr. 12:24-13:5).

In fact, according to Mr. Cummings, Zoloft allegedly increased his suicidal ideations, decreased his libido, and caused him difficulty maintaining an erection.  (PMC Tr. 15:14-17:16, 26:5-26:10).  But Mr. Cummings initially did not speak with any medical service provider about these side effects because he had no reason to believe that they were due to taking Zoloft.  (*Id.* at 17:24-18:23).  Between November 14, 2019, and December 13, 2019, Mr. Cummings briefly took a different mental health medication, Remeron. (Feb. 13 Letter 1-2).

In September 2020, after Mr. Cummings had stopped taking both Zoloft and Remeron, he first noticed "a difference around [his] nipple area." (Feb. 13 Letter 1).  That change became "aggressive" in 2022 and 2023, with Mr. Cummings noticing a gradual growth in his nipples.  (*Id.*; AC 6-7).  At that point, Mr. Cummings sought the attention of the prison's health care providers. (AC 6-7).  Blood tests revealed high levels of prolactin (hyperprolactinemia), a hormone that stimulates breast development and milk production.  (*Id.* at 6). In October 2023, Mr. Cummings consulted an endocrinologist, who diagnosed him with gynecomastia.  (*Id.* at 6-7; PMC Tr. 6:22-6:25).  Radiological imaging confirmed the diagnosis in April 2024.  (PMC Tr. 6:24-7:1; *see also* AC 7).  Mr. Cummings's libido still has not returned.  (AC 7; PMC Tr. 21:9-21:21).

In the process of being treated for gynecomastia, Mr. Cummings was repeatedly asked if he had been on any medications in the past, which caused him to look further into Zoloft's side effects. (PMC Tr. 24:19-25:2). At that point, Mr. Cummings realized a possible connection between taking Zoloft and the health issues he was experiencing. (*Id.*; *see also* AC 7). In fact, he asserts that Zoloft's medication guide listed gynecomastia and hyperprolactinemia as possible side effects. (PMC Tr. 46:7-46:12).

Mr. Cummings alleges that Mr. Cassar and Ms. Whittaker violated their "duty of care" in their treatment of him. (AC 8-9). Specifically, Defendants, "from their own negligence, acted with deliberate indifference when they disregarded known risks," resulting in injuries that are affecting Mr. Cummings now and possibly "for the remainder … of his life." (*Id.* at 9). Mr. Cummings claims that Mr. Cassar "deliberately disregarded his duty to counsel [Mr. Cummings] on, with great emphasis, the complete common side effects and/or patient counseling information of Zoloft." (*Id.* at 7). And he claims that Ms. Whittaker dispensed Zoloft to him "without counseling [him] on the common side effects reasonably foreseeable to her or providing a medication guide." (*Id.* at 8).

## B.    Procedural Background

Mr. Cummings filed this action on December 22, 2023 (Dkt. #1), alleging violations of his civil rights and seeking $750,000 in damages (AC 2, 6 (arguing that Defendants violated his Eighth Amendment rights and his "right to liberty")). The Court construes Mr. Cummings to assert a claim, under either

the Eighth or Fourteenth Amendment, for deliberate indifference to his medical needs and a separate Fourteenth Amendment claim for violation of his right to medical information. *Cf. Collins* v. *Feder*, No. 3:23 Civ. 71 (OAW), 2023 WL 4551421, at *2 (D. Conn. July 14, 2023) (considering a plaintiff who made similar factual allegations to be raising these two claims).

Originally, Mr. Cummings named various John/Jane Doe Defendants. (Dkt. #1). In response, on March 14, 2024, the Court issued an Order pursuant to *Valentin* v. *Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997), directing the New York City Law Department to ascertain the identities of the John/Jane Doe Defendants. (Dkt. #6). Following that Order, on May 13, 2024, the New York City Law Department identified the John/Jane Doe Defendants as Mr. Cassar and Ms. Whittaker. (Dkt. #10).

On August 12, 2024, Mr. Cummings filed the Amended Complaint ("AC"), the operative pleading in this matter, which named Mr. Cassar and Ms. Whittaker as Defendants. (Dkt. #25; *see also* Dkt. #43 at 2 (noting a clarification in the proper name of one Defendant that occurred at the January 17, 2025 pre-motion conference)). On October 15, 2024, Defendants requested a pre-motion conference to discuss an anticipated motion to dismiss. (Dkt. #33). The Court granted the request on October 29, 2024. (Dkt. #38). On November 8, 2024, Mr. Cummings filed a letter responding to Defendants' letter requesting a pre-motion conference. (Dkt. #41).

On January 17, 2025, the Court held the pre-motion conference. (January 17, 2025 Minute Entry; *see also* Dkt. #46). After the conference, the

6

Court issued an Order setting a briefing schedule and stating that it would consider the AC to include facts that Mr. Cummings discussed during the conference. (Dkt. #43). Then, on February 13, 2025, Mr. Cummings filed a letter providing additional context for some of the factual assertions he had previously made. (Dkt. #47). Defendants filed their motion to dismiss and supporting papers on March 7, 2025. (Dkt. #48). Mr. Cummings filed his opposition and supporting papers on May 6, 2025. (Dkt. #53-55). Defendants filed their reply on June 5, 2025. (Dkt. #56). Before the Court now is Defendants' motion to dismiss.

**DISCUSSION**

**A.     Applicable Law**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in Plaintiff['s] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'" *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff can overcome a Rule 12(b)(6) motion if the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require

7

heightened fact pleading of specifics, it does require enough facts to 'nudge [Plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Generally, a district court "adjudicating a Rule 12(b)(6) motion … must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'"  *Leonard F.* v. *Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen* v. *WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)); *see also United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

But this rule is not as stringent when the litigation involves a plaintiff proceeding *pro se*.  Given "the mandate 'to read the papers of *pro se* litigants generously,'" courts considering a Rule 12(b)(6) motion brought against such a plaintiff "may consider materials outside the complaint 'to the extent that they are consistent with the allegations in the complaint.'" *Alsaifullah* v. *Furco*, No. 12 Civ. 2907 (ER), 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (first quoting *Gadson* v. *Goord*, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 18, 1997); and then quoting *Donhauser* v. *Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004)).  In that scenario, district courts have considered factual assertions made in various contexts, including in the

plaintiff's briefing.  *See id.* (considering "factual allegations contained in Plaintiff's opposition papers, including his surreply"); *see also Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Lopez* v. *Cipolini*, 136 F. Supp. 3d 570, 579 (S.D.N.Y. 2015) (collecting cases).

A plaintiff's *pro se* status is also relevant to the standard of review. "A *pro se* complaint, however inartfully pleaded, is held to less stringent standards than formal pleadings drafted by lawyers." *Mali* v. *Brit. Airways*, No. 17 Civ. 685 (KPF), 2018 WL 3329858, at *3 (S.D.N.Y. July 6, 2018) (internal quotation marks omitted and alterations adopted) (quoting *Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976)).  Applying this directive, the Court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (internal quotation marks omitted) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  Even in the *pro se* context, however, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

**B.    Analysis**

**1.    The Court May Consider Factual Allegations in Plaintiff's February 13, 2025 Letter**

Before turning to the merits, the Court must address various preliminary matters, beginning with Defendants' argument that the Court should not consider the factual allegations in Mr. Cummings's February 13, 2025 letter. (Def. Br. 2-3 & n.2). In support, Defendants make two arguments, both of which are unavailing.

*First*, Defendants point to this Court's decision in *Yates* v. *Villalobos*, No. 15 Civ. 8068 (KPF), 2018 WL 718414 (S.D.N.Y. Feb. 5, 2018). (*See* Def. Br. 3). Defendants state that because Mr. Cummings filed his letter "nearly a month after the pre-motion conference," and it is not "in response to the Defendants' request for a pre-motion conference or part of the court conference," *Yates* dictates that the Court should not consider it. (Def. Br. 3 (citing *Yates*, 2018 WL 718414, at *1 n.2)). It is true that this Court held in *Yates* that it could consider facts raised by a *pro se* plaintiff in her response to a defendant's request for a pre-motion conference. 2018 WL 718414, at *2. Significantly, however, that case did *not* set the pre-motion conference as the deadline after which a *pro se* plaintiff could no longer make additional factual assertions.

To the contrary, courts in this District regularly consider factual assertions that *pro se* plaintiffs make long after the pre-motion conference, including after a defendant's briefing has concluded. *See, e.g., Alsaifullah*, 2013 WL 3972514, at *4 n.3 (relying on factual assertions in the plaintiff's

10

surreply); *Lopez,* 136 F. Supp. 3d at 579 (noting that courts may consider factual allegations *pro se* plaintiffs make in affidavits and briefs).  Especially given that Mr. Cummings's letter came more than three weeks before Defendants filed their motion to dismiss and opening brief, the Court finds it entirely appropriate to rely on the factual assertions in the letter.

    *Second,* Defendants argue that the Court should not consider the assertions in Mr. Cummings's February 13, 2025 letter because they are "not consistent with the factual allegations in the Amended Complaint."  (Def. Br. 3).  *See Alsaifullah,* 2013 WL 3972514, at *4 n.3 (noting that courts only need to consider a *pro se* plaintiff's allegations "to the extent that they are consistent with the allegations in the complaint" (internal quotation marks omitted) (quoting *Donhauser,* 314 F. Supp. 2d at 121)).  Mr. Cummings makes two factual allegations in his letter:  (i) He took Remeron between November 2019 and December 2019, and (ii) he initially noticed a change in his nipples in September 2020.  (Feb. 13 Letter 1-2).

    The Court finds no earlier statements that conflict with Mr. Cummings's first statement about when he took Remeron.  At the pre-motion conference, the Court asked Mr. Cummings if he "t[ook] another mental health medication [besides Zoloft] between *then* and October of 2023."  (PMC Tr. 13:24-14:1 (emphasis added)).  The Court used "then" to mean when Mr. Cummings "stopped taking Zoloft," which was early 2020.  (*Id.* at 13:20).  But it is possible that Mr. Cummings reasonably interpreted "then" to refer to a different time period.  And far from making a clear assertion at the conference, Mr.

Cummings repeatedly stated that he "c[ould]n't recall" when he took Remeron. (*Id.* at 14:2-14:15). His statement in the February 13, 2025 letter, then, is a helpful clarification.

The Court recognizes more tension, however, between the letter's second assertion and Mr. Cummings's statements in the AC. Mr. Cummings stated in his February 13, 2025 letter that he "first reported a difference around [his] nipple area in September 2020." (Feb. 13 Letter 1). The AC, somewhat contrarily, claims that "between 2022 & 2023, [P]laintiff began to recognize a gradual growth in his nipples, which he brought to the attention of the prison's health care providers." (AC 6). But despite the apparent tension between the statements, Mr. Cummings's letter provides a plausible explanation: The 2020 date is when he first "noticed" the change, whereas the 2022 date is when the change "became aggressive enough to prompt a diagnosis." (Feb. 13 Letter 1). In other words, the changes were slight in 2020 but increased in 2022 to the point where Mr. Cummings decided to consult a health care provider. The allegation in the letter adds context to — and remains consistent with — the allegations in the AC, and the Court thus considers it for the purposes of this motion to dismiss. *See Alsaifullah*, 2013 WL 3972514, at *4 n.3; *Sandoval* v. *Abbott House*, 782 F. Supp. 3d 203, 206 (S.D.N.Y. 2025).

### 2. Plaintiff's Claims Are Not Time-Barred

Defendants next argue that Plaintiff's claims are time-barred. (Def. Br. 20-21; Def. Reply 7-8). In New York, the statute of limitations for claims under Section 1983 is three years, which begins to run "when the plaintiff

12

knows or has reason to know of the injury which is the basis of his action."
*Hogan* v. *Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (internal quotation marks
omitted) (quoting *Pearl* v. *City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)).
Put another way, "a claim accrues when a plaintiff comes into possession of the
'critical facts that he has been hurt and who inflicted the injury.'" *Singleton* v.
*Clash*, 951 F. Supp. 2d 578, 588 (S.D.N.Y. 2013) (quoting *Rotella* v. *Wood*, 528
U.S. 549, 556 (2000)); *see also Valdez ex rel. Donely* v. *United States*, 518 F.3d
173, 177 (2d Cir. 2008) ("[W]here plaintiff would reasonably have had difficulty
discerning the fact or cause of injury at the time it was inflicted … , accrual
may be postponed until the plaintiff has or with reasonable discovery should
have discovered the critical facts of both his injury and its cause." (internal
quotation marks omitted) (quoting *Kronisch* v. *United States*, 150 F.3d 112, 121
(2d Cir. 1998))).  Applying these principles, the Second Circuit recently clarified
in an analogous factual setting that a

> deliberate indifference claim could not have accrued
> until [the plaintiff] either knew or had reason to know
> both [i] that he suffered from an objectively serious
> medical condition while he was incarcerated and
> [ii] that [the defendants] failed to provide adequate
> treatment because they consciously disregarded a
> substantial risk to his health and safety.

*Mallet* v. *N.Y. State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 132 (2d
Cir. 2025).

Mr. Cummings filed this action on December 22, 2023, and thus his
claims are timely if he knew or had reason to know of his injury and what
caused it on or before December 22, 2020.  Defendants, for their part, argue

that Mr. Cummings's claims are time-barred "because he had ample reason to know of his claims related to loss of libido and impotence while he was incarcerated at Rikers Island between May 2019 and October 2019." (Def. Br. 20-21).

It is true that Mr. Cummings alleges that he began to notice decreased libido while taking Zoloft. (PMC Tr. 17:5-17:13, 26:5-26:10). But Mr. Cummings also explains that he had no reason to believe that his decreased libido was due to taking Zoloft. (PMC Tr. 18:2-18:17). Even if Mr. Cummings knew that his decreased libido could be tied to Zoloft, he was not aware of the extent of his injury. As he points out, his medical records from September 14, 2020, indicate the service provider's opinion that Mr. Cummings had "no gynecomastia" and "no significant abnormalities." (Cummings Decl. 41). At that point, his injury had not become sufficiently serious such that it could be actionable, and he certainly did not know what caused it.

Consequently, Mr. Cummings's claims did not accrue until at least 2022. At that point, Mr. Cummings began experiencing more "aggressive" changes in his nipples that caused prison medical staff to perform blood tests, refer Mr. Cummings to an endocrinologist, and order radiological imaging. (*See* Feb. 13 Letter 1; AC 6-7; PMC Tr. 6:22-7:1). During that time, Mr. Cummings also first learned that his health issues may correspond to Zoloft's side effects. (PMC Tr. 24:19-25:2). It was only during that time that Mr. Cummings's claims accrued. *See Blaine* v. *Burnes*, No. 3:20 Civ. 1039 (KAD), 2020 WL 5659101, at *4 (D. Conn. Sept. 23, 2020) (determining on initial review that a plaintiff's

14

claim accrued in 2018, "when he became aware … that his mental health drugs," which he took from 2015 to 2016, "had a side effect that could cause him to develop gynecomastia").[3]  As such, the Court holds that they are timely based on the record before it.

### 3. The Prison Litigation Reform Act Does Not Mandate Dismissal of Plaintiff's Claims at This Stage

Defendants also argue that the Court is "require[d]" to dismiss the AC "because [Mr. Cummings] has failed to allege that he exhausted the available administrative remedies under the Prison Litigation Reform Act" ("PLRA").  (Def. Br. 18-19; *see also* Def. Reply 8).  But as Defendants should be well aware, a motion to dismiss is the wrong stage of litigation to consider such an argument.

Contrary to Defendants' assertion, the Supreme Court has specified that "failure to exhaust is an affirmative defense under the PLRA, and … inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones* v. *Bock*, 549 U.S. 199, 216 (2007).  In general, affirmative

---

[3] The Court also recognizes Mr. Cummings's argument that the Court, in the alternative, "should equitably toll the statute of limitations." (Pl. Opp. 20).  The Court need not decide that issue, but it does echo Mr. Cummings's concerns about the implications of holding that claims like Mr. Cummings's are time-barred. (*See id.* at 21).  Here, based on the (albeit incomplete) medical records Mr. Cummings provided, prison medical staff told Mr. Cummings that he had "no gynecomastia" and "no significant abnormalities" in late 2020. (Cummings Decl. 41).  And Mr. Cummings has been nothing if not diligent in pursuing his claim, filing this action in federal court even before radiological imaging confirmed his gynecomastia diagnosis in April 2024. (AC 6-7; PMC Tr. 6:22-7:1).  *See Smith* v. *McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("[T]he party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll.").  Regardless, this is too early in the litigation to consider equitable tolling. *See Clark* v. *Hanley*, 89 F.4th 78, 94 (2d Cir. 2023) ("Related to the pleading rules for affirmative defenses, equitable tolling often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record.").

defenses like Defendants' PLRA defense "usually cannot be considered on a motion to dismiss." *McSweeney* v. *Cohen*, 776 F. Supp. 3d 200, 232 (S.D.N.Y. 2025) (internal quotation marks omitted) (quoting *Doe 1* v. *Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 400 (S.D.N.Y. 2023)).  Considering an affirmative defense at this stage would improperly shift the burden of pleading the applicability of such defense from the defendant to the plaintiff.  *Cf. Horton* v. *Schenectady County*, No. 8:21 Civ. 983 (LEK) (CFH), 2023 WL 2552005, at *9 (N.D.N.Y. Mar. 16, 2023) (refusing to consider the defendant's affirmative defense as part of a motion to dismiss (citing *Kattu* v. *Metro Petroleum, Inc.*, No. 12 Civ. 54-A, 2013 WL 4015342, at *5 (W.D.N.Y. Aug. 6, 2013))).

There is a limited exception that allows the Court to consider an affirmative defense at the motion-to-dismiss stage "if the defense appears on the face of the complaint." *McSweeney*, 776 F. Supp. 3d at 232 (internal quotation marks omitted) (quoting *Pani* v. *Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)); *see also Whiteside* v. *Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021).  For example, this exception applies to statute-of-limitations defenses when "it appears from a complaint that claims are *prima facie* time-barred." *Strusman* v. *NYU Langone Hosps.*, No. 19 Civ. 9450 (LJL), 2020 WL 3415111, at *3 (S.D.N.Y. June 22, 2020); *see also Twersky* v. *Yeshiva Univ.*, 993 F. Supp. 2d 429, 436-37 (S.D.N.Y. 2014) (citing cases).

But failure to exhaust under the PLRA is nowhere on the face of Mr. Cummings's complaint.[4]  Defendants recognize as much.  (*See* Def. Br. 18 (supporting their PLRA argument by pointing to what Plaintiff "does not allege," rather than what he does allege)).  And Defendants have not pointed to any outside evidence to support their claim that Mr. Cummings needed to and failed to exhaust, which could have converted their Rule 12(b)(6) motion to a motion for summary judgment on the issue of exhaustion.  *See Roland* v. *Smith*, 907 F. Supp. 2d 385, 388-89 (S.D.N.Y. 2012) (refusing to consider exhaustion in a Rule 12(b)(6) analysis, but granting summary judgment because the defendants "provided evidence outside the pleadings to support their claim that [the plaintiff] failed to exhaust").

Lack of exhaustion under the PLRA is exactly the type of fact-specific defense that a district court may not consider before factfinding.  *Cf. Clark* v. *Hanley*, 89 F.4th 78, 95-96 (2d Cir. 2023) (indicating that a district court should make factual findings before deciding fact-specific legal issues such as equitable tolling).  As such, it is premature for the Court to determine whether Mr. Cummings complied with the requirements of the PLRA, and a bare assertion that he did not cannot bar his claims at this stage.

### 4. Plaintiff Fails to Plead a Section 1983 Claim for Deliberate Indifference to Medical Needs

Having disposed of these preliminary issues, the Court now turns to the merits.  Mr. Cummings alleges that Defendants were deliberately indifferent to

---

[4]    In fact, Mr. Cummings asserts that did not need to exhaust.  (Pl. Opp. 14-16).

his medical needs in violation of his constitutional rights when they failed to inform him of Zoloft's side effects.  (AC 8-9 (alleging that Defendants "acted with deliberate indifference when they disregarded known risks that were likely to result" from providing Plaintiff with Zoloft)).[5]

The Eighth Amendment prohibits state actors from acting with "deliberate indifference to serious medical needs of prisoners."  *Estelle*, 429 U.S. at 104, 106.  The Supreme Court extended that protection to pretrial detainees under the Due Process Clause of the Fourteenth Amendment.  *See City of Revere* v. *Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (noting that, while "the Eighth Amendment has no application" to a pretrial detainee, the "Due Process Clause … does require the responsible … governmental agency to provide medical care to" pretrial detainees).  "A [pre-trial] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"  *Darnell* v. *Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (quoting *City of Revere*, 463 U.S. at 244).

Here, Mr. Cummings's claims relate to his time at Rikers Island after his arrest, but the record is unclear about whether he was a pretrial or post-conviction detainee.  (*See* AC 5 (stating that "[P]laintiff was *in the custody* of New York City Department of Correction" (emphasis added)); Pl. Opp. 1 (stating

---

[5]    Mr. Cummings's allegations are somewhat of an awkward fit for the deliberate indifference to medical needs doctrine, so the Court also construes him as having alleged a claim for impairment of the right to refuse treatment, which the Court discusses in the next section.  *See Smalls* v. *Wright*, 807 F. App'x 124, 126 (2d Cir. 2020) (summary order) (analyzing a plaintiff's allegations that a defendant failed to inform him of a medication's side effects under the right to refuse medical treatment rather than deliberate indifference to medical needs).

that the time period at issue was "[b]etween Plaintiff's pre-trial to post-trial detention")). As such, the Court analyzes Mr. Cummings's deliberate indifference claim under both the Eighth and Fourteenth Amendments. *See Darby* v. *Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (comparing the two standards). (*Cf.* Def. Br. 8-9 (applying both standards)).

Deliberate indifference has both a subjective and an objective component. "First, the alleged deprivation [of adequate medical care] must be, in objective terms, sufficiently serious." *Chance* v. *Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted) (quoting *Hathaway* v. *Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). "Second, the defendant 'must act with a sufficiently culpable state of mind.'" *Id.* (quoting *Hathaway*, 37 F.3d at 66); *see also McClain* v. *Ventrella*, No. 22-485, 2023 WL 4284903, at *2 (2d Cir. June 30, 2023) (summary order) (reiterating the standard). Here, Plaintiff fails to plead sufficient facts to establish either prong.

### a.    Plaintiff Fails to Satisfy the Objective Element

The objective element is the same under the Eighth and Fourteenth Amendments. *Dumel* v. *Westchester County*, 656 F. Supp. 3d 454, 464 (S.D.N.Y. 2023). Under this prong, "the alleged deprivation of adequate medical care must be sufficiently serious." *Id.* (internal quotation marks omitted) (quoting *Spavone* v. *N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)). Most commonly, this involves an analysis of whether the plaintiff suffered from a "serious medical condition." *Mallet*, 126 F.4th at 132. Relevant factors "include whether 'a reasonable doctor or patient would find it

important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin* v. *Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (alteration adopted) (quoting *Chance*, 143 F.3d at 702), *abrogated on other grounds as recognized by*, *Kravitz* v. *Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023).

But here, Mr. Cummings's claim is not that Defendants ignored a serious medical condition.[6]  Instead, he claims that "the inadequacy is in the medical treatment given."  *Salahuddin*, 467 F.3d at 280.  In cases like this, establishing a serious medical condition does not complete the inquiry under the objective prong.  *See id.* ("[A]lthough we sometimes speak of a 'serious medical condition' as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.").  Instead, courts must "focus on the alleged inadequacy of treatment, not the underlying condition alone."  *Butler* v. *Furco*, 614 F. App'x 21, 22 (2d Cir. 2015) (summary order) (citing *Smith* v. *Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)).[7]  "[M]inor and inconsequential" lapses in treatment are not actionable.  *Carpenter*, 316 F.3d at 186.  Here, the Court holds that Mr. Cummings's resulting medical

---

[6]    Nor does Mr. Cummings claim that any health care provider was deliberately indifferent to the medical needs that allegedly arose after Mr. Cummings's intake of Zoloft:  He only sued medical providers who prescribed and administered Zoloft, not those who administered care after Zoloft's side effects began manifesting.  (*See* Feb. 13 Letter 1 (alleging that the most serious side effects appeared *after* Mr. Cummings stopped taking Zoloft)).

[7]    This is contrary to Defendants' assertion that the medical provider's conduct is irrelevant under the objective prong.  (*See* Def. Reply 4).

20

conditions were sufficiently serious to be actionable, but that Defendants'

treatment was adequate.  As such, Plaintiff has not satisfied the objective

prong.

### i.    Plaintiff's Medical Conditions Are Sufficiently Serious

Defendants argue that Mr. Cummings does not have an actionable

"serious medical condition."  (Def. Br. 12-13).  At this stage of the litigation, the

Court disagrees.  To be "sufficiently serious," a medical condition must

"significantly affect[ ] daily activities" or involve "chronic and substantial pain."

*Mallet*, 126 F.4th at 132 (internal quotation marks omitted) (first quoting

*Chance*, 143 F.3d at 702; and then quoting *Brock* v. *Wright*, 315 F.3d 158, 162

(2d Cir. 2003)).

Defendants cite a myriad of cases from outside this District where courts

have found that a plaintiff's gynecomastia and sexual dysfunction were not

sufficiently serious to be actionable.  (*See* Def. Br. 12-13).  For example, in

*Blaine*, the court determined that the plaintiff, who also had gynecomastia, did

not "sufficiently allege[ ] a serious medical condition" because he "only allege[d]

that his condition causes him embarrassment and leads him to shower wearing

a t-shirt to avoid bullying."  2020 WL 5659101, at *6.  And in *Washington* v.

*Fludd*, the court noted that breast enlargement or gynecomastia alone was not

sufficient to constitute a serious medical condition.  No. 18 Civ. 1273 (JS) (SIL),

2019 WL 1643542, at *3 (E.D.N.Y. Apr. 16, 2019).  But those cases do not

resolve the motion here.

21

In fact, each case recognized that gynecomastia *could* be a sufficiently serious injury. *See, e.g., Blaine*, 2020 WL 5659101, at *6 (granting the motion to dismiss because the plaintiff did not allege pain, discomfort, or discharge from the nipple); *Fludd*, 2019 WL 1643542, at *3 (allowing the plaintiff to amend his complaint to add a description of how his gynecomastia affected his daily activities). In fact, a sister court in this District recently stated that "[i]n cases where [an incarcerated individual] alleges that gynecomastia 'significantly affects daily activities' or cause[s] him 'chronic and substantial pain,' gynecomastia may qualify as a serious medical condition.'" *LaTouche* v. *Rockland County*, No. 22 Civ. 1437 (LTS), 2022 WL 953111, at *8 (S.D.N.Y. Mar. 29, 2022); *see also Portillo* v. *City of New York*, No. 17 Civ. 6675 (VSB), 2020 WL 2836435, at *5 (S.D.N.Y. June 1, 2020) ("[G]iven Plaintiff's allegations of being in chronic and great pain as a result of his gynecomastia symptoms, I find that Plaintiff has alleged sufficient facts to plausibly demonstrate that he had a serious medical need."); *Jackson* v. *Caplan*, No. 3:24 Civ. 533 (OAW), 2024 WL 2000702, at *2 (D. Conn. Apr. 22, 2024) ("Where a plaintiff alleges that gynecomastia significantly interferes with his daily activities or causes him substantial pain, gynecomastia can be considered a serious medical need.").

Such is the case here based on the pleadings. Mr. Cummings has been diagnosed with gynecomastia (AC 6-7; PMC Tr. 6:22-6:25), and he describes injuries involving "chronic, consistent nipple pain" (Cummings Decl. 42; *see also* AC 6-7) and a continued loss of libido that he worries may last "for the remainder … of his life" (AC 6-7, 9; *see also* PMC Tr. 21:9-21:21). At this stage

22

of the litigation, the Court finds that Mr. Cummings has done enough to allege that nipple pain as well as his impotence and loss of libido significantly affect his daily activities. (*See* Cummings Decl. 42; *see also* Pl. Opp. 17 (explaining the multitude of negative physical and mental health effects that Mr. Cummings has experienced)). Therefore, the Court finds that his medical conditions, as pleaded, are sufficiently serious. *Cf. Leconte* v. *Lightner*, No. 3:14 Civ. 1492 (VLB), 2015 WL 4104842, at *3 (D. Conn. July 8, 2015) (finding a "serious medical need" because the plaintiff "grew breasts" that "drew salacious comments from other inmates and ridicule from prison staff," which "jeopardize[d] his physical health" and "his mental health").

### ii.      Defendants' Medical Care Was Adequate

Despite the seriousness of Mr. Cummings's medical conditions, Defendants' treatment was objectively adequate, and thus Mr. Cummings's claims fail the objective prong. Mr. Cassar prescribed Zoloft to Mr. Cummings after Mr. Cummings started experiencing frequent suicidal ideations. (AC 5). Mr. Cassar informed Mr. Cummings of various possible side effects of Zoloft, including increased suicidal ideations, nausea, and vomiting. (*Id.* at 8; PMC Tr. 9:1-9:15). Ms. Whittaker then administered Zoloft to Mr. Cummings daily. (AC 8). The question is whether the failure to notify Mr. Cummings of Zoloft's other side effects constitutes inadequate medical care.

The Second Circuit has stated that "a doctor should not be required to provide each prisoner-patient with an exhaustive list of all the possible adverse effects of each aspect of his treatment. Instead, a doctor simply must provide a

23

prisoner with such information as a reasonable patient would find necessary to making an informed decision regarding treatment options." *Pabon* v. *Wright*, 459 F.3d 241, 250 (2d Cir. 2006).  Even assuming that gynecomastia and hyperprolactinemia were possible side effects of Zoloft when Defendants prescribed it to Mr. Cummings — a fact that Defendants contest (*see* Def. Br. 6) — Defendants' failure to inform Plaintiff of such possible side effects does not render their care inadequate.

At most, Zoloft's medication guide lists "sexual problems including decreased libido" as a potential side effect, but only on the bottom of the second page.  (Cummings Decl. 5).[8]  Sexual side effects are entirely absent from the medication guide's first page, which lists "the most important information [a patient] should know about ZOLOFT."  (*Id.* at 4).  In other words, nowhere does Mr. Cummings allege that the side effects he experienced were common among Zoloft's users or central to Zoloft's prescribing information. Even Mr. Cummings himself acknowledges that this case is not about "Zoloft's most common side effects."  (Pl. Opp. 12).

Given the facts that (i) Defendants need not describe every side effect to provide adequate care, *Pabon*, 459 F.3d at 250, and (ii) the side effects that Mr. Cummings allegedly experienced were not listed among the most "important" side effects of the medication (*see* Cummings Decl. 4-5), the Court finds that

---

[8]    The Court may consider the Zoloft medication guide in resolving the instant motion because the guide is incorporated by reference in Mr. Cummings's pleadings.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint).

24

Defendants acted reasonably as a matter of law in warning Mr. Cummings about certain side effects of Zoloft, but not the sexual ones. *See Acevedo* v. *City of New York*, No. 24 Civ. 558 (GHW), 2025 WL 2802764, at *8 (S.D.N.Y. Oct. 1, 2025) ("An 'official's duty is only to provide reasonable care'; 'officials who act reasonably in response to an inmate-health risk cannot be found liable[.]'" (quoting *Salahuddin*, 467 F.3d at 279-80)). As such, Mr. Cummings has not satisfied the objective element.

### b.    Plaintiff Fails to Satisfy the Subjective Element

The bigger problem with Mr. Cummings's allegations is that they do not establish that Defendants "acted with a 'sufficiently culpable state of mind.'" *Mallet*, 126 F.4th at 132 (quoting *Hathaway*, 37 F.3d at 66). Here, the standards differ between the Eighth and Fourteenth Amendments. Under the Eighth Amendment, a plaintiff must establish that the defendant "kn[e]w[ ] of and disregard[ed] an excessive risk to inmate health or safety." *Darby*, 14 F.4th at 128 (internal quotation marks omitted) (quoting *Farmer* v. *Brennan*, 511 U.S. 825, 837 (1994)). Under the Fourteenth Amendment, the plaintiff must establish that the defendant "*knew* that … the … medical treatment would pose a substantial risk to [the plaintiff's] health or that the defendant[ ] *should have known* that … the … medical treatment would pose a substantial risk to the [plaintiff's] health." *Id.* (internal quotation marks omitted) (quoting *Charles* v. *Orange County*, 925 F.3d 73, 87 (2d Cir. 2019)). Under both standards, deliberate indifference goes beyond "mere medical malpractice" and

25

"involves culpable recklessness."  *Charles*, 925 F.3d at 87 (internal quotation marks omitted) (quoting *Cuoco* v. *Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000)).

Mr. Cummings has not alleged facts indicating culpable recklessness under either standard.[9]  Simply put, his allegations do not amount to a showing that he faced "a *substantial risk* of serious harm."  *Charles*, 925 F.3d at 87 (internal quotation marks omitted and emphasis added) (quoting *Cuoco*, 222 F.3d at 107)).[10]  Even if Mr. Cummings *experienced* serious harm, *see supra* B.4.a.1, there was no *substantial risk* of that harm occurring.  In the materials that Mr. Cummings provided, sexual side effects were reported in, at most, 8% of those who took Zoloft.  (Cummings Decl. 9).

Mr. Cummings aptly argues that Defendants knew or should have known of Zoloft's potential side effects.  (Pl. Opp. 2-3, 11, 24-25 (stating, for example, that "Defendants had sufficient information about possible risks ... associated with Zoloft")).  But that does not mean that prescribing and administering the medication with knowledge of those side effects "pose[d] a substantial risk to the [plaintiff's] health."  *Darby*, 14 F.4th at 128 (internal quotation marks omitted) (quoting *Charles*, 925 F.3d at 87).  In fact, prescribing medication with knowledge of its minor side effects is appropriate, not reckless.  *See Padilla* v. *Corr. Care Sols.*, No. 9:17 Civ. 1150 (MAD) (TWD), 2018 WL 550610, at *4

---

[9]     This holding is foreseeable given the Court's previous holding that Defendants' care was objectively adequate as a matter of law.  *See supra* B.4.a.ii.

[10]    Given this, Mr. Cummings certainly did not face an "excessive risk" to his health or safety, which would be required under the Eighth Amendment.  *Darby* v. *Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Farmer* v. *Brennan*, 511 U.S. 825, 837 (1994)).

(N.D.N.Y. Jan. 22, 2018) (stating that, alone, the failure to inform a patient of side effects "is certainly insufficient" to make out a claim "inasmuch as most prescription medications have side effects" (internal quotation marks omitted) (quoting *Bryant* v. *Wright*, No. 09 Civ. 2456 (GBD) (GWG), 2010 WL 3629443, at *8 (S.D.N.Y. Aug. 31, 2010), *R. & R. adopted*, No. 09 Civ. 2456 (GBD), 2010 WL 3629426 (S.D.N.Y. Sept. 15, 2010), *aff'd*, 451 F. App'x 12 (2d Cir. 2011) (summary order))).

Far from Defendants being indifferent to Mr. Cummings's medical conditions, they took his care seriously. When Mr. Cummings experienced suicidal ideations, Defendants provided him with a medication approved to treat such a condition and made sure that he took it. (AC 5-6; PMC Tr. 7:24-8:25; *see also* Pl. Opp. 1 (recognizing that Mr. Cummings was receiving treatment for his suicidal ideations)). Based on the allegations, Defendants' actions were not risky enough to qualify as reckless. "At most," they "constitute negligence, which is not actionable in a § 1983 claim." *Padilla*, 2018 WL 550610, at *4 (citing *Hendricks* v. *Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991)).

To be sure, the Court's resolution of the issue might have been different had Mr. Cummings pleaded that Defendants knew of and "conscious[ly] disregard[ed]" the side effects that Mr. Cummings experienced. *Charles*, 925 F.3d at 87 (internal quotation marks omitted) (quoting *Cuoco*, 222 F.3d at 107); *see also, e.g.*, *Collins* v. *Feder*, No. 3:23 Civ. 71 (KAD), 2024 WL 1658442, at *4 (D. Conn. Apr. 17, 2024) (denying a motion to dismiss when the plaintiff

27

alleged that the defendant continued to prescribe a medication despite the plaintiff's complaints about its effects).  But that is not what Mr. Cummings alleges.

Here, because Mr. Cummings never alerted Defendants to any of his alleged side effects, Defendants had no reason to believe that he was experiencing them.  *See Idowu* v. *Middleton*, No. 12 Civ. 1238 (LGS), 2013 WL 4780042 (S.D.N.Y. Aug. 5, 2013) ("Plaintiff cannot show that [the defendant] was deliberately indifferent, because Plaintiff has not alleged that [the defendant] was *aware* of Plaintiff's side effects[.]" (emphasis added)); *K.A.* v. *City of New York*, No. 18 Civ. 3858 (ALC), 2023 WL 6393479, at *6 (granting summary judgment to the defendants because the plaintiff "did not report [her] symptoms," so "it was impossible for Defendants to know she was experiencing them or to act to treat them").[11]

In addition, Mr. Cummings does not allege other traditional markers of a culpable mental state.  He makes no assertion that Defendants chose "'an easier and less efficacious' treatment plan."  *Chance*, 143 F.3d at 703 (quoting *Williams* v. *Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)).  He does not allege "ulterior motives," such as "monetary incentives."  *Id.* at 704; *see also Acevedo*, 2025 WL 2802764, at *10 (declining to dismiss an action "because Plaintiff plausibly alleges that the decision was driven by ulterior motives").  Mr.

---

[11]    In this regard, Mr. Cummings argues that he had "discretion, like any other patient, to bring or not bring his health concern(s) to the attention of healthcare professionals." (Pl. Opp. 13).  This is true, but by exercising his discretion to withhold the fact that he was experiencing side effects from taking Zoloft, he ensured that Defendants remained unaware of — rather than deliberately indifferent to — his health concerns.

Cummings has not even alleged any "deviat[ion] from reasonable medical practice." *Acevedo*, 2025 WL 2802764, at *11 (internal quotation marks omitted) (quoting *Freire* v. *Zamot*, No. 14 Civ. 304 (SLT) (LB), 2016 WL 6330405, at *5 (E.D.N.Y. Oct. 27, 2016)).

Instead, Mr. Cummings makes conclusory allegations that Defendants "acted with deliberate indifference." (AC 9). But the Court need not accept Mr. Cummings's legal conclusions as true when considering a motion to dismiss. *Iqbal*, 556 U.S. at 678-79; *Rolon*, 517 F.3d at 149. He also argues that Defendants possessed the requisite mental state because "it would be illogical for them to say that they did not do what they were obligated or reasonably expected to do." (Pl. Opp. 5). But failing to meet a patient's expectations does not amount to deliberate indifference. *See Darby*, 14 F.4th at 128. The facts that Mr. Cummings pleads at most point to negligence. (*See* Pl. Opp. 10 (arguing that Defendants had a "duty to inform" Mr. Cummings of Zoloft's side effects)). Thus, Mr. Cummings has failed to sufficiently plead allegations to satisfy the subjective prong.

The Court understands why, in hindsight, Mr. Cummings views the course of treatment he received as the wrong one. But that does not mean that Defendants acted with deliberate indifference. Mr. Cummings may have had an unfortunate reaction to an appropriate course of treatment. That is not enough to give rise to a constitutional claim. *Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the

fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

> 5.   **Plaintiff Fails to Plead a Section 1983 Claim for Impairment of the Right to Refuse Treatment**

In addition to a claim for deliberate indifference to medical needs, the Court construes Mr. Cummings as alleging a separate violation of his right to medical information under the Fourteenth Amendment, which is perhaps a more natural fit for the facts of this case. *See Washington* v. *Harper*, 494 U.S. 210, 221 (1990) (recognizing an incarcerated person's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs"). (*See also* Def. Br. 17-18 (briefly considering such a claim)).

The Second Circuit explained the contours of such a cause of action in *Pabon*, 459 F.3d 241. "To establish a violation of this right, a[n] [incarcerated person] must show that [i] government officials failed to provide him with such information; [ii] this failure caused him to undergo medical treatment that he would have refused had he been so informed; and [iii] the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." *Id.* at 246; *see also Alston* v. *Bendheim*, 672 F. Supp. 2d 378, 384 (S.D.N.Y. 2009) (discussing the standard). Plaintiff has pleaded facts establishing the first two prongs, but not the third.

### a.    Plaintiff Adequately Pleads That Defendants Failed to Provide Him With Information That Caused Him to Undergo Medical Treatment He Would Have Otherwise Refused

The Court begins by briefly discussing together the first two prongs of the analysis, which require a "show[ing] that, had [the plaintiff] received information that was not given to him, he would have exercised his right to refuse the proposed treatment." *Pabon*, 459 F.3d at 251. Here, there is no question that Defendants failed to notify Mr. Cummings of Zoloft's sexual side effects, which Mr. Cummings claims kept him from "properly and effectively weigh[ing] Zoloft's risks against its benefits." (AC 7). If Mr. Cummings had the chance, he indicates that he would have refused the drug as a treatment option. (*Id.* at 7-8). At this stage of the litigation, Mr. Cummings's allegations satisfy the first two prongs under *Pabon*.

### b.    Plaintiff Fails to Plead Deliberate Indifference to His Right to Refuse Medical Treatment

Simply showing that a plaintiff would have taken a different course of action had he known certain information is not sufficient to support a claim for violation of the right to refuse medical treatment. Deliberate indifference is another necessary element. *Pabon*, 459 F.3d at 251. "[T]o incur liability[,] a prison official's failure to adequately inform a patient regarding that patient's proposed medical treatment must be done with, at a minimum, deliberate indifference to the [incarcerated person]'s right to refuse treatment." *Id.* "[S]imple negligence will not suffice." *Id.*

31

The deliberate indifference required to establish a claim based on the right to refuse medical treatment is different than that required to prove a claim for deliberate indifference to medical needs. *Collins*, 2024 WL 1658442, at *2; *cf. supra* B.4.b. "Here, Plaintiff must allege facts showing that 'the doctor withheld information with the intent that the prisoner agree to treatment he otherwise would refuse.'" *Id.* (quoting *Collins*, 2023 WL 4551421, at *4).

Courts in this Circuit have repeatedly held that even a negligent act of failing to disclose side effects is not enough to allege a constitutional claim absent some intent to induce a plaintiff to accept the medication. *See, e.g.*, *Lara* v. *Bloomberg*, No. 04 Civ. 8690 (KMW) (HBP), 2008 WL 123840, at *5 (S.D.N.Y. Jan. 8, 2008) ("Plaintiff does not, and indeed Plaintiff cannot, allege that the doctors' purported failures to inform Plaintiff of the side effects of his medication were driven by the doctors' desire to require Plaintiff to accept the treatment offered."); *Smith* v. *Corizon Health Servs.*, No. 14 Civ. 8839 (GBD) (SN), 2015 WL 6123563, at *2 (S.D.N.Y. Oct. 16, 2015) ("It is not enough for the health worker to merely fail to inform a prisoner of the risks and side effects of a medication."); *Campbell* v. *Khan*, No. 9:21 Civ. 1021 (GLS) (CFH), 2023 WL 9101982, at *14 (N.D.N.Y. Dec. 13, 2023) (noting that the defendant's "alleged failure to inform plaintiff of potential side effects 'amounts to, at most, medical malpractice or negligence'" (quoting *Sanders* v. *Ocean Cnty. Bd. of Freeholders*, No. Civ. 16-5380 (MAS) (LHG), 2021 WL 637828, at *3 (D.N.J. Feb. 18, 2021))).

For example, in *Alston*, a sister court in this District considered a case in which a plaintiff, who had a prior opioid dependency, alleged that the

32

defendant prescribed a medication without informing the plaintiff of its addictive propensities, despite the fact that the defendant knew about the risks. 672 F. Supp. 2d 378 at 384. But the court held that the plaintiff "failed to adequately allege that [the defendant] was deliberately indifferent to Plaintiff's right to refuse unwanted medical treatment" because knowledge of possible side effects was not enough. *Id.* "At most," the court clarified, the allegations "amount to negligence," *id.* at 385, which "does not make out a violation of either the substantive or procedural aspects of the Due Process Clause of the Fourteenth Amendment," *id.* (internal quotation marks omitted) (quoting *Pabon*, 459 F.3d at 250). As such the court dismissed the plaintiff's claims against the defendant. *Id.*

The same conclusion is required here. As discussed above, Mr. Cummings alleges nothing about Defendants' reasons for failing to disclose Zoloft's sexual side effects. *See supra* B.4.b. (*See also, e.g.*, AC 9 (alleging that Defendants "disregarded known risks")). Mr. Cummings did not push back at all when Mr. Cassar prescribed Zoloft, so there is no indication that Mr. Cassar had any need to induce him into taking the medication. (*See* AC 5-6 ("[P]laintiff agreed in good faith to be medicated."); PMC Tr. 8:17-8:25). Like in *Corizon Health Services*, lacking are "specific allegations demonstrating that the health worker acted with a culpable state of mind." 2015 WL 6123563, at *2; *see also Alston*, 672 F. Supp. 2d at 385 (dismissing the plaintiff's claim because he did not allege that the defendant "withheld information from him for the purpose of requiring Plaintiff to accept" the medication).

33

The Second Circuit, when mapping the contours of this cause of action, sought "[t]o avoid liability" in a situation where "*after* receiving appropriate treatment that proved to have unpleasant side effects," an incarcerated person "claim[s] that he had not received sufficient information to allow him to decide whether to refuse that treatment." *Pabon*, 459 F.3d at 250 (emphasis added). This case presents precisely that scenario. Mr. Cummings received appropriate treatment, but he now is understandably upset with the results of that treatment. While the Court sympathizes with Mr. Cummings's medical issues, his allegations do not give rise to a constitutional claim.

### 6. The Court Declines to Exercise Supplemental Jurisdiction over Any State-Law Claims Under 28 U.S.C. § 1367(a)

28 U.S.C. § 1367(a) provides a district court with "supplemental jurisdiction over all other claims that are so related to claims" within the district court's original jurisdiction "that they form part of the same case or controversy." But the "district court[ ] may decline to exercise supplemental jurisdiction … if … the district court has dismissed all claims over which it has original jurisdiction. *Id.* § 1367(c)(3). Indeed, the Second Circuit has stated that "where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Delaney* v. *Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Marcus* v. *AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)).

Here, Mr. Cummings does not specifically allege any state-law claims. (*See* AC 2 (alleging federal question jurisdiction based on a violation of the Eighth Amendment and the "right to liberty")). But even if the Court construes

34

Mr. Cummings's allegations to include state-law claims, *see, e.g., Harris* v. *Visallo*, No. 23 Civ. 4440 (LTS), 2023 WL 4423558, at *4 (S.D.N.Y. July 10, 2023) ("Although Plaintiff has not invoked state law, a *pro se* litigant's complaint generally must be liberally construed as including related state law claims."), it declines to exercise supplemental jurisdiction over such claims.

The Supreme Court has indicated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.* v. *Cohill,* 484 U.S. 343, 350 n.7 (1988); *see also Pitchell* v. *Callan,* 13 F.3d 545, 549 (2d Cir. 1994) (endorsing the view that "it is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims prior to trial"); *Catzin* v. *Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction."); *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (confirming that when Section 1367(c)(3) "is triggered," the district court has "discretion" to "balance[ ] the traditional 'values of judicial economy, convenience, fairness, and comity'" (quoting *Cohill,* 484 U.S. at 350)).

Such is the case here.  Convenience and "judicial economy support[ ] dismissal … because this case is far from trial ready." *Penske Media Corp.* v. *Shutterstock, Inc.,* No. 20 Civ. 4583 (MKV), 2024 WL 1313356, at *2 (S.D.N.Y.

Mar. 27, 2024); *cf. Catzin*, 899 F.3d at 86 (finding that the district court abused its discretion when it *sua sponte* revoked supplemental jurisdiction "one day prior to the final pretrial conference and a week before the scheduled trial date").  Comity and fairness strongly support dismissal because "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 726 (1966).  Therefore, the Court declines to exercise supplemental jurisdiction.  *See Mann* v. *Daniels*, No. 10 Civ. 7540 (PKC) (THK), 2011 WL 2421285, at *5 (S.D.N.Y. June 9, 2011) (declining to exercise supplemental jurisdiction "[t]o the extent plaintiff asserts a state-law claim for medical malpractice").

## CONCLUSION

For the above reasons, Defendants' motion to dismiss is GRANTED.  Mr. Cummings's federal claims are dismissed with prejudice.  To the extent Mr. Cummings intended to plead claims under state or city law, those claims are dismissed without prejudice.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  This Court further certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this decision would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this Opinion to Mr.

Cummings at his address of record.

SO ORDERED.

Dated:    December 11, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

37